UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN OWENS,                                   Case No. 24-10732

                        Plaintiff,             Matthew F. Leitman
v.                                             United States District Judge

MEIJER, INC.,                                  Curtis Ivy, Jr.
                                               United States Magistrate Judge

                        Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SANCTIONS (ECF No. 30)**

On June 25, 2025, Defendant filed a *Motion for Discovery Sanctions
Pursuant to Fed. R. Civ. P. 37*.  (ECF No. 30).  The District Judge referred this
motion to the undersigned on the next day.  (ECF No. 31).  The parties have fully
briefed the motion.  (ECF Nos. 35, 37).  The Court held a status conference
between the parties on December 4, 2025, and conducted a hearing on the motion
for sanctions on December 11, 2025.  (ECF Nos. 44, 45).  The Court also granted
Plaintiff's motion for leave to file a supplemental brief on the motion for sanctions.
(ECF No. 50).  For the following reasons, the motion is **GRANTED IN PART
AND DENIED IN PART**.

## I.    BACKGROUND

On April 3, 2025, the Court granted Defendant's *Motion to Compel Answers to Interrogatories and Production of Documents*.  (ECF No. 18).  In doing so, the Court provided detailed instructions on how Plaintiff should supplement his discovery responses.  (*Id.* at PageID.179–81).  In particular, the Court ordered Plaintiff to do the following:

1.    Supplement Interrogatory No. 6 and Requests for Productions ("RFPs") Nos. 1, 4, and 9 with complete answers.  Plaintiff's supplemental response should describe his efforts to obtain the information described in Interrogatory No.6 if such efforts prove unsuccessful.  If Plaintiff is unable to fully respond to the RFPs, then his supplemental response should clarify whether no such documents exist or whether Plaintiff presently does not have such documents in his possession.  If the latter, Plaintiff should describe the efforts taken to obtain the documents.

2.    Provide all information related to his job search and mitigation efforts (Interrogatory Nos. 5 and 6; RFP Nos. 1, 4, and 9).  This includes but is not limited to producing the last six months of Plaintiff's Indeed application history as well as the complete email from Wendy's indicating Plaintiff's job interview with that employer.  (ECF No. 12-4, PageID.136).  With respect to the interrogatories, Plaintiff should describe his efforts to obtain the information if such efforts prove unsuccessful.  If Plaintiff is unable to fully respond to the RFPs, then his supplemental response should clarify whether no such documents exist or whether Plaintiff presently does not have such documents in his possession.  If the latter, Plaintiff should describe the efforts taken to obtain the documents.

3.    Supplement RFP No. 7 with Plaintiff's income tax records from 2020 to the present, including all supporting schedules and returns.  Though Plaintiff may not have filed his taxes during this period of time, he should provide confirmation of the same

from the IRS.  If Plaintiff cannot do so himself, then he is
**ORDERED** to sign a tax records authorization form permitting
Defendant to do so; Plaintiff's counsel will promptly provide
Plaintiff a tax records authorization form to do so if needed.

(*Id.* at PageID.179).  The Court also ordered Plaintiff to submit a stipulation to the

Court if he agreed to limit his request for non-economic emotional distress

damages.  (*Id.* at PageID.179–80).  Otherwise, Plaintiff was ordered to supplement

his response to Interrogatory No. 1 and RFP Nos. 11–13; this included providing

signed releases for identified medical providers.  (*Id.* at PageID.180).  Plaintiff's

supplemental production was due within fourteen days of the Court's Order (e.g.,

April 17, 2025).  (*Id.*).

Plaintiff did not challenge the Court's Order for supplemental production.

Instead, he objected to the Court's imposition of sanctions.  (ECF Nos. 20, 25).

His efforts did not succeed.  (ECF Nos. 24, 32).  Accordingly, Plaintiff's

supplemental production was due April 17, 2025.

Defendant argues that Plaintiff did not produce his supplemental responses

in accordance with the Court's April Order.  (ECF No. 30, PageID.379–81).

Believing that Plaintiff violated this Court's discovery Order, Defendant moves for

sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A).[1]  In particular,

---

[1] Defendant also asked the Court to order payment of the sanctions imposed in the April
Order.  (ECF No. 30, PageID.381).  This aspect of the Court's April Order was satisfied after the
Court overruled Plaintiff's objections and denied his motion for reconsideration.  (ECF No. 35,
PageID.470–71).  In turn, this Order will not address this matter any further.

Defendant requests dismissal of this action as a sanction pursuant to Rule 37(b)(2)(A)(v).  (*Id.* at PageID.381–88).  Alternatively, Defendant asks the Court to craft appropriate non-dismissal sanctions, namely (1) directing as established Defendant's affirmative defenses regarding the subject matter of the discovery requests at issue; (2) barring Plaintiff from supporting his claims for economic or noneconomic damages; (3) striking portions of Plaintiff's complaint concerning back pay, front pay, and emotional distress damages; or (4) a combination of the above.  (*Id.* at PageID.389).  Defendant also asks for an award of costs and fees for drafting this motion.  (*Id.* at PageID.390).

Plaintiff ardently resists Defendant's characterization of events, especially the nature of his supplemental discovery responses.  He insists that he fulfilled his discovery obligations on April 2, 2025, one day before the Court entered its Order.  Specifically, Plaintiff contends that he produced all job search documentation in his possession; notified Defendant that he had no tax returns to provide (a matter Plaintiff confirmed when he later provided Defendant tax transcripts from the IRS); and twice confirmed in writing that he only seeks garden variety emotional distress damages.  (ECF No. 35, PageID.469–70).  Furthermore, Plaintiff contends that Defendant has suffered no actual prejudice and that Defendant did not confer in good-faith with Plaintiff before filing its motion.  (*Id.* at PageID.471–72).  Plaintiff thus says sanctions of any kind are unwarranted.

In rebuttal, Defendant asserts that it did properly confer with Plaintiff prior to filing this motion.  Defendant also claims that Plaintiff's supplemental production from April 2, 2025, was incomplete and that the parties did not reach an agreement regarding garden-variety emotional distress damages.  Defendant avers that because Plaintiff's production from April 2 was insufficient and Plaintiff did not comply with the Court's April Order, sanctions are still warranted.  (ECF No. 37).

## II.    ANALYSIS

### A.    Defendant's Attempts to Obtain Plaintiff's Concurrence

Before proceeding further with the merits of Defendant's motion, it is prudent that the Court first address Plaintiff's claim that Defendant did not properly seek concurrence before filing its motion.  As an initial matter, Plaintiff only cited to Rule 37 in support of its position.  This is likely an erroneous citation because the Federal Rules of Civil Procedure only require a movant to certify its good-faith attempt to confer with the nonmovant when seeking "an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  Defendant does not seek such an order here; rather, Defendant wants an order imposing sanctions on Plaintiff under Rule 37(b), which does not contain a conferral requirement like Rules 37(a) and Rule 37(d).  *See Oro BRC4, LLC v. Silvertree Apartments, Inc.*, No. 2:19-cv-4907, 2022 WL 19558082, at *5 (S.D. Ohio Mar. 18, 2022)

(observing that Rule 37(a)'s conferral and certification requirements are irrelevant to a motion not brought under Rule 37(a)).  Even so, Local Rule 7.1(a) requires a prospective movant to seek concurrence from the nonmovant prior to filing a motion.[2]  *See* E.D. Mich. LR 7.1(a); *Parker v. Cox*, Civ. Action No. 09-14753, 2011 U.S. Dist. LEXIS 56341, at *4–5 (E.D. Mich. May 10, 2011).

As required under the Court's Local Rules, Defendant stated that defense counsel "sought concurrence in the relief requested from Plaintiff's attorney on June 25, 2025, but concurrence was not obtained."  (ECF No. 30, PageID.368).  Before formally seeking concurrence, defense counsel spoke with Plaintiff's counsel on the telephone on June 4, 2025, regarding the outstanding discovery the Court ordered Plaintiff to produce.  (ECF No. 37, PageID.485).  Emails filed with Defendant's briefing also confirm that it tried to resolve the perceived deficiencies in Plaintiff's production on June 6, 2025.  (ECF No. 37-2, PageID.526).  The emails then reflect unproductive conversations that ultimately culminated in a June 25, 2025, email from defense counsel indicating that (1) she had followed up for the ordered discovery numerous times to no avail; (2) she would be filing a motion for discovery sanctions; and (3) she sought Plaintiff's concurrence on the motion

---

[2] During the hearing, Plaintiff's counsel referred to the Local Rules instead of Rule 37 on the concurrence issue.

despite her presumption that Plaintiff would not agree.  (ECF No. 37-2, PageID.518).

As these communications demonstrate, Plaintiff's contention that Defendant "did not follow up after the April 3 Order" is simply not true.[3]  Based on the weeks-long back-and-forth communications between counsel, the Court is satisfied that Defendant fulfilled its obligation to seek Plaintiff's concurrence under Local Rule 7.1(a).[4]

## B.    Governing Standards

Rule 37(b)(2)(A) enables the Court to impose sanctions for a party's failure to obey an order to provide or permit discovery, including an order under Rule 37(a).  The Court's April Order is one such order.  Accordingly, if Plaintiff has failed to obey this Order, the Court can impose sanctions that may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

---

[3] Plaintiff also states that Defendant filed its motion for sanctions as a form of retaliation in response to Plaintiff's motion to compel.  (ECF No. 35, PageID.466–67).  There is, of course, a less-nefarious reason for the timing of Defendant's motion—fact discovery was set to close on June 23, 2025.

[4] Plaintiff may contend that Defendant did not act in good-faith, particularly as it relates to emotional distress damages.  For the reasons described below, Defendant sought concurrence in good-faith.  *See infra* Subsection II.C.1; note 8.

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). This list is non-exhaustive, and the Court has wide discretion to determine an appropriate sanction, if any. *See Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, No. 1:16-CV-10317, 2023 WL 1452062, at *10 (E.D. Mich. Feb. 1, 2023) (citations omitted). The Court "must" also "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

To determine the appropriate sanction under Rule 37(b)(2)(A), district courts weigh four factors: (1) "whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault"; (2) "whether the adversary was prejudiced by the party's failure to cooperate in discovery"; (3) "whether the party has warned that failure to cooperate could lead to the sanction"; and (4) "whether less drastic sanctions were first imposed or considered." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997); *see also Victor v. Reynolds*, 649 F. Supp. 3d 499, 505–06

8

(E.D. Mich. 2023).  The test is virtually the same when the Court considers

dismissal as a possible sanction.  *See Mager v. Wisconsin Cent. Ltd.*, 924 F.3d 831,

837 (6th Cir. 2019) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir.

2002)).  Though "none of the factors is outcome dispositive, . . . a case is properly

dismissed by the district court where there is a clear record of delay or

contumacious conduct." *Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 958 (6th

Cir. 2018) (citation modified).  "'Contumacious' is defined as 'perverse in resisting

authority' and 'stubbornly disobedient.'" *Bradley J. Delp Revocable Tr. v.

MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 521 (6th Cir. 2016) (citation

omitted).

     In imposing sanctions under Rule 37, the Court must be careful not to

penalize a party for his attorney's ineptitude or sanctionable conduct. *See

Freeland*, 103 F.3d at 1277–78.  Indeed, "dismissal is usually inappropriate where

the neglect is solely the fault of the attorney." *Carpenter v. City of Flint*, 723 F.3d

700, 704 (6th Cir. 2013) (citation modified).  Even so, "clients must be held

accountable for the acts and omissions of their attorneys." *In re Love*, 3 F. App'x

497, 498 (6th Cir. 2001) (per curiam) (citation modified).

**C.     Discussion**

For the Court to impose sanctions, it must first determine whether Plaintiff

has disobeyed the Court's April Order. If so, the Court must then determine the

appropriate sanction. The Court addresses each inquiry in turn.

### 1. Plaintiff's Supplemental Production

Defendant's motion to compel—the impetus for the Court's April 3 Order—

asked the Court to compel production of four groups of discovery: (1) records and

information related to Plaintiff's job search following his employment with Meijer

(Interrogatory No. 5 and RFP No. 1); (2) documents and information relating to

Plaintiff's employment following his separation from Defendant, including his

compensation and benefits (Interrogatory Nos. 5–6 and RFP Nos. 1, 4, and 9); (3)

Plaintiff's income tax records (RFP No. 7); and (4) documents related to Plaintiff's

medical and mental health history (Interrogatory No. 1 and RFP Nos. 11–13).

(ECF No. 12, PageID.80).

The April Order required Plaintiff to submit supplemental discovery

responses that fully responded to the disputed discovery requests and, in the event

Plaintiff did not have responsive materials, document Plaintiff's efforts to identify

or obtain responsive materials. So there should simply be one document

containing the ordered supplemental production. Yet to determine whether

Plaintiff has complied with this order, the Court has had to cross-reference the

April 2 supplemental production with Defendant's original discovery requests,

Plaintiff's responses, and various emails in the record. This alone suggests that Plaintiff did not do as he was ordered.

The substance of Plaintiff's April 2 supplemental production is unsatisfactory considering what the April Order required. Interrogatory No. 5 required Plaintiff to identify the people with whom he dealt with when applying for jobs and detail the outcomes of those job applications. (ECF No. 37-1, PageID.492). None of Plaintiff's responses identified any of the individuals involved or acknowledged that he was unable to identify anyone after performing a reasonable search for such information. Nor did the April 2 production—consisting of, in relevant part, screenshots of varying degrees of blurriness of Plaintiff's Indeed job application history—fully detail the outcome of Plaintiff's various job applications. (*Id.* at PageID.510–17) (showing some job postings as "closed or expired"). Similarly, RFP No. 1 asked for, among other things, resumes, CVs, letters of recommendation, and offer or rejection letters related to Plaintiff's job applications. (*Id.* at PageID.501). The Indeed screenshots are not responsive to a request for such documents. Nor does Plaintiff's inability to access the applications make clear whether such documents do not exist or whether such documents do exist but that they are not in his custody, control, or possession because he can no longer access the applications. This is problematic because the

April Order required Plaintiff to include such clarification in his supplemental responses.

As part of Interrogatory No. 6, Defendant asked Plaintiff to describe the services he provided for his employers after January 2023 and detail any fringe benefits he received. (*Id.* at PageID.492–93). None of Plaintiff's responses to this discovery request described his job duties or referred to fringe benefits in any way. Under the April Order, however, Plaintiff needed to fully respond; as he did not address the entirety of Interrogatory No. 6, he did not comply with the April Order. Moreover, the Court ordered Plaintiff to provide the full email that confirmed Plaintiff's job interview with Wendy's. None of Plaintiff's production in response to Interrogatory No. 6 address this aspect of the April Order. Even so, Plaintiff's counsel informed defense counsel via email that Plaintiff "couldn't access the Wendy's email." (ECF No. 50-1, PageID.819). But this was the exact sort of information Plaintiff was supposed to include in a supplemental response—not in an email between counsel months after Plaintiff was supposed to supplement his discovery responses.[5]

_____

[5] Based on other emails in the supplemental briefing, Plaintiff believed he did not have to address his Taco Bell employment because the Order only mentioned Wendy's. (ECF No. 50-1). But Plaintiff misread the April Order. The Court expressly ordered Plaintiff to "provide all information related to his job search and mitigation efforts." (ECF No. 18, PageID.179). This would include responsive materials pertaining to his Taco Bell employment. The Court only specified Wendy's with respect to the email confirming Plaintiff's job interview. (*Id.*) ("This includes ***but is not limited to*** producing the last six months of Plaintiff's Indeed application history as well as the complete email from Wendy's . . . .") (emphasis added).

RFP No. 4 requested "any and all documents, records and papers in any way pertaining to Plaintiff's employment," including all materials regarding any fringe benefits Plaintiff was or is eligible to receive.  (ECF No. 37-1, PageID.502). Plaintiff's responses to this discovery request only referred to the manner in which he applied for his Taco Bell and Wendy's jobs, his W-2s for Taco Bell and Wendy's (which Defendant already had), and his inability to access his Indeed applications.  These responses plainly do not respond to the request pertaining to fringe benefits.  When this was brought up during the motion hearing, Plaintiff's counsel argued that the absence of any mention of fringe benefits meant that Plaintiff did not have responsive documents on that front.  But such implication-by-omission is not permitted under the April Order—rather, Plaintiff had to explicitly state in a supplemental response that no responsive documents existed or that he did not possess such documents (in which case he would also need to explain what he did to search for those documents).  Finally, none of Plaintiff's supplemental production in response to RFP No. 4 addresses his most recent employment with Arby's.

Defendant's RFP No. 9 requested all of Plaintiff's payroll and/or paycheck stubs since October 2022.  (*Id.* at PageID.504).  Plaintiff initially stated he would sign employment records authorization for all employers after Defendant; considering Defendant had to file a motion to compel, it is apparent that Plaintiff

did not do so.  Plaintiff's April 2 production—the same W-2s and Indeed search—is not responsive to RFP No. 9.  (*Id.*).  The Court ordered Plaintiff to fully respond to RFP No. 9.  (ECF No. 18, PageID.179).  As he did not do so, Plaintiff violated the April Order.  Perhaps Plaintiff does not have the requested paystubs in his possession—but if that's the case, the April Order required him to say exactly that.

With respect to RFP No. 7, the April Order required Plaintiff to confirm he did not have tax returns for the years requested with documentation from the IRS. (*Id.* at PageID.179).  If Plaintiff could not do so, he was ordered to sign an authorization form that permitted Defendant to obtain such documentation.  (*Id.* at PageID.179).  Though Plaintiff asserts he confirmed he did not have tax returns, the Court required him to provide confirmation with documentation from the IRS. He did not do so until June 25–26, 2025.  (ECF No. 37, PageID.486–87).  But under the April Order, Plaintiff had until April 17, 2025, to do so.  Plaintiff's production therefore was not timely.[6]

---

[6] In an email submitted with the supplemental brief, Plaintiff's counsel stated "there[ was] no time period in [the Order] for [supplementing RFP No. 7]."  (ECF No. 50-1, PageID.818).  Plaintiff and/or counsel is mistaken.  The Court ordered Plaintiff to provide "the ordered supplemental discovery responses **within fourteen days of this Order**.").  (ECF No. 18, PageID.180).  Plaintiff's counsel argued in an email to defense counsel that "[t]here's nothing routine about trying to help an individual pull their tax information from the IRS, especially not this year."  (ECF No. 50-1, PageID.818; ECF No. 52-1, PageID.842).  Presumably, this is a reference to recent reduction-in-force actions at the federal level.  While understandable, there is no indication when Plaintiff attempted to obtain the tax transcripts and how long it took to obtain them.

This leaves Interrogatory No. 1 and RFP Nos. 11–13 which sought information and records related to medical and mental health treatment Plaintiff received in the last five years.  (ECF No. 12-1, PageID.98–99, 111–12).  On this matter, Defendant moved for an order requiring Plaintiff to stipulate on the record to (1) seek only garden variety emotional distress damages; and (2) not offer any medical or mental health expert testimony.  (ECF No. 12, PageID.95–96).  Alternatively, Defendant wanted the Court to order Plaintiff to identify the medical providers that treated Plaintiff in the past five years and to provide signed releases for each identified provider.  (*Id.* at PageID.97).

Prior to the status conference on April 1, 2025, defense counsel asked Plaintiff's counsel whether Plaintiff would agree to sign a stipulation limiting the non-economic emotional distress damages in the manner described in Defendant's motion to compel and related brief.  (ECF No. 21-5, PageID.248).  Just hours before the status conference, Plaintiff's counsel responded, "that's fine."  (*Id.*).  Accordingly, during the April 1 status conference, the parties indicated that Plaintiff had agreed to limit his request for emotional distress damages.  Even so, it appeared to the Court that the parties had not agreed on the specific language of the proposed stipulation.  (ECF No. 37, PageID.487).  The Court therefore instructed Plaintiff to submit a stipulation to the Court if he did agree with Defendant so that the stipulation would be on the record.  (ECF No. 18, PageID.180).  But in the

event the parties did not reach an agreement, the Court ordered Plaintiff to supplement Interrogatory No. 1 and RFP Nos. 11–13 in the manner Defendant requested. (*Id.*). The Court ordered Plaintiff to either submit the stipulation to the Court or produce supplemental discovery responses by April 17, 2025.

Nothing resembling a stipulation was filed by that date. Instead, Plaintiff filed his objection to sanctions and therein referred to the April 1 "that's fine" email as the stipulation between the parties. (ECF No. 20, PageID.189).[7] But in the Court's estimation, this email only reflects an agreement in principle only, especially since the defense counsel's email was a request to sign a stipulation and defense counsel did not share a draft proposed stipulation until June 10, 2025. (ECF No. 37-2, PageID.518, 524). So contrary to Plaintiff's contention, he only filed an email reflecting his intention to agree to a stipulation with Defendant—he did not actually file the agreed upon stipulation as ordered.

Plaintiff also contends that this matter is no longer an issue as it was resolved before the Court filed its April Order. (ECF No. 35, PageID.468). But the emails included with Defendant's briefing confirm that the parties came to an agreement in principle only. When Defendant shared a proposed stipulation that articulated the details of the parties' agreement—including how it defined garden

---

[7] The email itself, however, was filed one day later on April 18, 2025. (ECF Nos. 21-2, 21-5).

variety emotional distress damages—Plaintiff's counsel refused to sign.  In

pertinent part, Plaintiff's counsel disagreed with Defendant's definition of garden

variety emotional distress damages.  (ECF No. 37-2, PageID.518–26).  Yet,

Plaintiff's counsel offered no revisions or suggested language in response to

Defendant's proposed stipulation.  Rather, Plaintiff's counsel believed that the

"that's fine" email was enough, even though it responded to a request to sign a

stipulation.  (ECF No. 21-2, PageID.238; ECF No. 21-5, PageID.248).  Indeed,

Plaintiff's counsel stated that the proposed language exceeded "the stipulation we

came to," despite the parties not agreeing to particular language for that

stipulation.[8]  (ECF No. 37-2, PageID.518).

    Despite this disagreement, Plaintiff filed a "Notice of Stipulation regarding

Plaintiff's Non-Economic Damages" on June 20, 2025.  (ECF No. 27).  This filing

indicates that Plaintiff agreed to pursue "garden variety emotional distress

damages" in this lawsuit.  Notably, this does not contain the second part of the

stipulation Plaintiff's counsel agreed to in principle—to not offer any medical or

mental health expert testimony.  It is also clear the parties do not agree on what

---

[8] These emails reflect Defendant's good-faith efforts to obtain Plaintiff's signature for the
stipulation he agreed to sign in principle.  *See* E.D. Mich LR 7.1(a).  As the parties did not have
agreed upon language for the proposed stipulation, Defendant engaged in good faith to finalize
the stipulation.  Plaintiff's counsel's allegations of bad-faith conduct regarding these
deliberations lack support.

constitutes garden variety emotional distress damages based on emails exchanged between counsel that very day.

Finally, during the hearing, Plaintiff's counsel argued that Defendant was "moving the goalposts" with respect to the stipulation. In essence, she argued that the terms of the stipulation were based on the "that's fine" email, and Defendant tried to alter those terms in the proposed draft because it included additional language not included in that email. But in elaborating on the definition of garden variety emotional distress damages, defense counsel cited the same case included in Defendant's motion to compel and others that stand for the same proposition. (ECF No. 12, PageID.96 (citing *Kubik v. Cent. Michigan Univ. Bd. of Trs.*, No. 15-12055, 2016 WL 9631633 (E.D. Mich. Mar. 17, 2016)); ECF No. 37-2, PageID.521) (same)). Thus, Defendant's position regarding the stipulation has remained the same since it first raised the issue in its motion to compel.

In all, it is clear to the Court that the parties did not reach a substantive agreement; it is also clear that what Plaintiff filed to evince an agreed upon stipulation—e.g., the "that's fine" email and the Notice that does not reflect both prongs of Defendant's stipulation request—did not comply with the April Order.

The Court's April Order accounted for a disagreement between the parties. In the event of a disagreement, Plaintiff was supposed to supplement his responses to Interrogatory No. 1 and RFP Nos. 11–13. As the parties did not reach an

agreement, Plaintiff needed to supplement his discovery responses. As he did not do so, Plaintiff failed to obey this aspect of the April Order.

At bottom, Plaintiff's April 2 supplemental production did not fully respond to the discovery requests at issue in Defendant's motion to compel. The Court's April Order required Plaintiff to fully respond to the same discovery requests by April 17, 2025. Despite Plaintiff believing he discharged his discovery obligations, he did not object to the Court's Order for supplemental production as moot. Plaintiff therefore still had to comply with the April Order. Because he did not do so, "further just orders" may be warranted pursuant to Rule 37(b)(2)(A).

### 2. Rule 37(b)(2)(A) Sanctions

Though Plaintiff did not follow the April Order to the letter, the Court is not convinced that the requested sanctions are warranted.

"For a plaintiff's actions to be motivated by bad faith, willfulness, or fault, his conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Bradley J. Delp Revocable Tr.*, 665 F. App'x at 521–22. This requires a "clear record of delay or contumacious conduct." *Barron v. Univ. of Michigan*, 613 F. App'x 480, 484 (6th Cir. 2015) (citation modified). There is no such record here. Rather, the record shows that Plaintiff tried to resolve the discovery dispute before the Court could even file an order on Defendant's then-pending motion to compel.

Plaintiff's counsel has exchanged numerous emails with defense counsel to settle these disputes.  Plaintiff and his counsel have also continuously maintained that Plaintiff has provided all the responsive discovery material in his possession.  To find that these efforts evince an intent to thwart judicial proceedings or reflect a reckless disregard for the effect of Plaintiff's conduct would be to unnecessarily elevate form over function.  This factor favors Plaintiff.

Defendant has also not made a strong showing of prejudice.  While Defendant has expended time and money to obtain complete discovery responses, Plaintiff is adamant that he has provided all responsive documents and information in his possession.  Defendant has also obtained Plaintiff's employee files from Taco Bell and Wendy's, so it is unclear what more Plaintiff can provide with respect to his employment with those employers.  And though Defendant contends it has been unable to fully develop its defense against Plaintiff's claims, it would seem that there is nothing further in Plaintiff's possession to provide in response to the discovery requests at issue.  So any possible prejudice does not the result from a failure to supplement but rather Plaintiff's failure to format its supplemental production in the manner described in the April Order.  The Court concludes that this factor favors Plaintiff more than it does Defendant.

The Court also has not previously warned Plaintiff about the possibility of dismissal as a sanction.  That said, "[w]here a plaintiff has not been given notice

that dismissal is contemplated, a district court should impose a penalty short of dismissal unless the derelict party has engaged in bad faith or contumacious conduct." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997). But as the Court does not find that Plaintiff engaged in bad faith or contumacious conduct, this factor also falls in Plaintiff's favor.

The final factor—the imposition of lesser sanctions—also favors Plaintiff. While the Court must consider alternative sanctions, dismissal with prejudice is appropriate only when no other sanction would "protect [the] integrity of the judicial process." *Bradley J. Delp Revocable Tr.*, 665 F. App'x at 524. With the integrity of the judicial process in mind, the Court finds that dismissal is not warranted here. Likewise, Defendant's proposed alternative sanctions are too harsh because, as Defendant acknowledges, they have the same effect as an order of dismissal. (ECF No. 30, PageID.389 n.3). Plaintiff's error was not supplementing his discovery responses in the manner detailed in the April Order. Even so, he has still provided Defendant all responsive materials in his possession. To reiterate, the Court will not elevate form over function here.

That said, the Court cannot simply ignore Plaintiff's failure to comply with the April Order. Defendant is entitled to precisely what the Court ordered Plaintiff to provide in April. The Court therefore finds that an appropriate sanction is ordering Plaintiff to supplement his discovery responses as originally ordered. For

21

instance, he cannot rely on implication-by-omission.  If a discovery request asks about fringe benefits, then Plaintiff needs to directly respond on that matter.  It may simply be that Plaintiff does not know after performing a reasonable search through his own records.  But he needs to expressly say so.  As another example, Plaintiff needs to provide a proper supplemental response regarding the Wendy's email.  The Court ordered Plaintiff to provide the full email and, if he could not, explain what he did to try and do so.  The April Order did not permit Plaintiff— through his attorney—to tell Defendant via email months later that he simply could not access it.  Plaintiff must do this for each of the discovery requests identified in the Court's April Order.  (ECF No. 18, PageID.179).  Plaintiff must provide the supplemental production **within fourteen days of this Order**.

Similarly, the Court finds it prudent to start where it did in April with respect to the proposed stipulation on emotional distress damages.  The Court ordered Plaintiff to submit a stipulation on the record if he agreed with Defendant's proposal.  Though the parties reached an agreement in principle, it is clear the parties do not agree on what constitutes "garden variety emotional distress damages."  If the parties can manage to reach a substantive agreement, then the parties must file the signed <u>joint</u> stipulation with the Court.  If the parties cannot reach an agreement, then Plaintiff must identify his medical providers for the last five years and provide signed authorizations in response to Interrogatory No. 1 and

RFP Nos. 11–13—just as originally ordered.  It cannot be forgotten that the parties are only here now because Plaintiff's initial discovery responses were grossly inadequate and inconsistent with deposition testimony.  (ECF No. 12-1, PageID.111–12 (responding "None" without explaining whether that meant no responsive documents existed or that no responsive documents were in Plaintiff's custody, control, or possession); (ECF No. 18, PageID.176 (referencing Plaintiff's deposition testimony indicating he indeed sought medical care in recent years)).  The parties need not agree—but if they do not, Defendant is entitled to responsive information and documents as a result of Plaintiff's meaningless discovery responses.

The parties must file the joint stipulation **within fourteen days of this Order**.  If no stipulation is reached, then Plaintiff must properly supplement his responses to Interrogatory No. 1 and RFP Nos. 11–13 **within fourteen days of this Order**.

Should Plaintiff fail to properly supplement his discovery responses, then he his is hereby **WARNED** that such failure may result in sanctions including dismissal.

### 3.    Fees and Costs

As mentioned, Rule 37(b)(2)(C) requires the Court to issue an award of fees and costs "unless the failure was substantially justified or other circumstances

make an award of expenses unjust."  Considering Plaintiff's attempts to supplement his discovery responses, his attorney's efforts to resolve any outstanding issues without the Court's intervention, and his representation that he has effectively produced all responsive documents and information in his possession, the Court does not find an award to be just here.  Thus, Defendant's request for an award of fees and costs is **DENIED**.

## III.    CONCLUSION

For the above-stated reasons, Defendant's *Motion for Sanctions Pursuant to Fed. R. Civ. P. 37* (ECF No. 30) is **GRANTED IN PART AND DENIED IN PART**.  To the extent that Defendant seeks sanctions, the motion is **DENIED**.  To the extent that Defendant seeks supplemental discovery responses consistent with this Court's Order, the motion is **GRANTED**.  Though dismissal (and sanctions equivalent to dismissal) is unwarranted, Plaintiff is **ORDERED** to properly supplement his discovery responses as originally required under the April Order, and thoroughly discussed above, **within fourteen days of this Order**.  *See supra* Subsection II.C.2.  This includes the dispute regarding emotional distress damages.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as

error any defect in this Order to which timely objection was not made.  Fed. R.

Civ. P. 72(a).  Any objections are required to specify the part of the Order to which

the party objects and state the basis of the objection.  When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: December 29, 2025                    s/Curtis Ivy, Jr.
                                           Curtis Ivy, Jr.
                                           United States Magistrate Judge